May it please the Court. My name is Sam Heyman. I am an Assistant Appellate Defender and I represent the Appellant Edward Elliott. Although we raised five issues in the brief, I have prepared most of my argument addressing the second issue, the Confrontation Clause violation. But of course, if your Honors have questions or would like to discuss any of the four other issues, I am prepared to address those as well. Will you talk about the Batson issue? Sure. I think in terms of the Batson issue, Davis, which is the Illinois Supreme Court case from 2008, is directly on point. As in Davis, the judge in this case short-circuited the mandatory three-stage process of Batson and simply stopped the Batson inquiry at the second stage, where the state had proffered race-neutral reasons for three of the four challenge strikes. The judge missed the fact that the state didn't proffer reasons for the fourth juror and then simply accepted the race-neutral reasons but didn't inquire, as he was required to at the third stage, into whether the state's reasons were pretextual. Is your argument before us limited only to Ms. Rubio, that one particular juror who was allegedly Hispanic? In terms of failing to even meet their low burden at the second stage, yes, it's limited to Michelle Rubio. So you're not raising any issue about the other excused jurors, right? We're not raising an issue that they didn't proffer race-neutral reasons. Certainly they gave race-neutral reasons for the other three, but the judge was still required, even for the three that there were race-neutral reasons for, to address whether, entertain arguments by a defense counsel, first of all, and then address whether those reasons were pretextual or not. The case law is very clear that there is a three-step process and each step must be done. And yet you only ask us to remand for the third step when there is no consideration of any of the factors that goes into the first step at all. Well, I think the judge, the trial court was present, obviously, at the trial, saw the makeup of the denier and accepted the fact that the defense counsel had met her burden at the first stage, that there was a prima facie case of discriminatory strikes. So that was not articulated on the record? On the record. I think the mere fact that the judge proceeded to the second stage, because if the judge doesn't accept that there's a prima facie case, there's no need to even ask the state if there are race-neutral reasons for it. I'm just supposed to submit whose argument are you making? Well, of course this court has the authority and can remand for a four-step hearing if you'd like. Obviously, defense counsel, our position is defense counsel met her burden at the first stage, the state met their burden at the second stage in regards to three of the four, so there would have to be a limited second-stage inquiry in terms of Michelle Rubio. But what never happened was the third-stage inquiry, which is mandatory. So at the least this court should remand for a third-stage inquiry. As to Rubio or as to all four? Second stage as to Rubio, third stage as to all four, whether they were presexual. But if we're to make a clearly erroneous determination on each step, how can we do it even as to the first step and fully evaluate the second and third steps without that first step having been done? And without, you know, without even your client having the benefit of the arguments that could be made in a discussion of factors involved in that determination? Well, certainly if you think that the burden is not met at the first stage, you should. And also what case says that we can skip this stage one? I don't think, I think the point is that stage one was not skipped, Your Honor. That the judge accepted the defense-submitted prima facie case of discrimination at the first stage. Well, I didn't see that in the record. I just think it's a clear inference, Your Honor. But, of course, if you disagree, then I agree that it needs to be remanded for a full if that's an inquiry. So what remedy are you, you know, are you actually asking us to implement as to these four? And we have to, you're saying it's all four now, right? Not just Rubio. I'm saying that in terms of pretext, yes, the state would have to, the judge would have to entertain arguments about whether all four strikes were pretextual or any of the four. So what are you suggesting our mandate look like? We were manned with instructions to do what? To complete the second stage Batson inquiry with regard to Michelle Rubio, because the state never proffered her dismissal reason, and to allow defense counsel to entertain arguments from both sides in regards to the pretextual determination at the third stage. And then make a finding? Yes, make a finding of whether the defense proves or shows that any of the state's strikes were pretextual and that there actually was discriminatory intent, and if there was, then a new trial is required. All right. And are you suggesting that we, as part of our mandate, authorize the judge to do a new trial if he makes certain findings, or should we freeze everything at that point and let that record come back up to us? To review the Batson, I'm not aware of the actual procedure. I apologize for that. I would guess that just as a, you know, if the judge determined that there was discriminatory intent, and a new trial is required under Batson, I assume that's within the circuit court's power. I'm not sure if the state can appeal from that finding, but perhaps the state would have the ability to file an interlocutory appeal or something like that. But then what do we do? I mean, what would we do? I look at People v. Martinez and 317LF, third, 1040, and the court, it's somewhat similar where there was an attack on the second or third stage, but it was remanded for, you know, a Batson hearing and the proper findings. And then the other issues were? Were frozen. Right. Well, I just think for the sake of judicial economy. In that case, retain jurisdiction. Well, I'm sorry I can't be more helpful about that question. I think for the sake of judicial economy, obviously we feel that a new trial is required because of the hearsay, the confrontational. Well, judicial economy would also mandate that if the judge erred in determining that there was a new trial, that we don't have the new trial, as long as we're up here already. I mean, there's a way we can do it, which is to send down a partial mandate. But if they just do this, make a record, and make a finding, and then it comes back up to us. But then, Your Honor, I think we're in the same position as we are today in terms of you had this trial. We feel there was a clear confrontation clause violation. The violation of everybody else's Sixth Amendment rights. The evidence was not overwhelming. And it was preserved. So the state, a new trial is required unless the state can show beyond reasonable doubt that the evidence was overwhelming. Well, let's say we agree with you, just moving on to your confrontation clause argument, that the testimony in question was not proper. Why can't we get around that problem by saying the evidence through other sources was overwhelming, and therefore this was simply cumulative? Well, first of all, I think the Antonio Paz's out-of-court accusation, which is what's at issue here, was certainly not cumulative, because he was the only one of the two eyewitnesses, the two other eyewitnesses, the properly admitted evidence that knew Edward Elliot before the shooting. There's evidence that he tainted the identifications of the other two by discussing, and Tyler Shields openly admitted that he discussed the identity of the shooter with Antonio Cox before Shields identified Edward in a photo array. And there's strong evidence that there was some sort of tampering involved with Willie Wright, who was a terrible witness for other reasons. But there was evidence that he told the grand jury that the shooter fled towards Aberdeen, which would make no sense unless he knew that Edward Elliot, who he claimed he did not know, knew that Edward Elliot lived on Aberdeen. And I just think if you look at Willie Wright's testimony, the two eyewitnesses, Willie Wright and Tyler Shields, they were very poor witnesses. Well, and that's the problem we always have with these cases, is whether the witness is poor or credible isn't our job. It's the job of the jury or the trial court. I agree. In terms of their credibility and what weight to give their testimony. But when the first witness at trial, Officer Woods, recounts the point-blank ultimate issue accusation by the brother, that wins over the entire trial. And the whole trial, doubtlessly, the jury was waiting to hear from Antonio Cox. So they hear from Willie Wright, who's a bad witness, but they assume they're going to hear from Antonio Cox later. They hear from Tyler Shields, same thing. They never hear from Antonio Cox. There was no limiting instruction. Even if there was a limiting instruction, it was in the judge's favor, because the course of investigation exception did not apply. So I think it would be quite a reach to say that the jury, if you removed the effect of Antonio Cox's out-of-court accusation, that no rational jury could have acquitted Edward Elliott. I think that would be quite a reach. In terms of, I just want to reiterate, the state had no gun, no DNA, no fingerprints, and there was no inculpatory statement made at trial. As I said, both eyewitnesses, neither of the eyewitnesses knew Edward Elliott. And I think, so I think the case obviously we rely on the most is Jura, which is a case where there was a comparable hearsay violation, and the court found, this court found that the evidence was not overwhelming. The evidence was not harmless. And in that case, the evidence was much stronger. The eyewitness evidence was much stronger. There were three, the state had three trained and sworn police officers who were no doubt much more persuasive witnesses than Tyler Shields and Willie Ray, who had trouble conveying even the most basic observations to the jury. And all three of those officers said they specifically saw the defendant hold a gun in the alley. All three of them. So if that evidence is not overwhelming, then I find it hard to believe that this evidence could be considered harmless beyond reasonable doubt. Unless there are any other questions about the hearsay issue or the Batson issue, I'd rest on the brief in regards to the other three pending counsel's counterargument. So for the reasons given in the brief, and especially in the second issue, I would ask that you reverse your demand for a new trial. Thank you. Thank you. May it please the court. Assistant State's Attorney Sarah McGann on behalf of the people of the state of Illinois. Your Honors, the people ask that you affirm defendant's conviction for first degree murder and his sentence of 60 years for unloading a bullet into 16-year-old victim Anthony Cox on July 15, 2010. Your Honors, with regards to defendant's first issue, the Batson issue, there is no issue here. Let me first say, importantly, we have a trial judge, Judge Wilson, making an astounding, pristine record during voir dire. In fact, Judge Wilson asks each veneer member their race or ethnicity on the record. So we have that during voir dire. And also, when we go back in chambers, after the entire 28 veneer members are impaneled, the parties go back in chambers with defendant, and thereafter they present their respective causes and peremptories. We can see from the common law record that the trial judge even made a tally sheet where this is all spelled out and very transparent for both parties. It's during this time that defense counsel makes an equivocal, sweeping objection as to all of the state's peremptories, which are spelled out for counsel at that time. This, again, is a broad... At that juncture, isn't it true that the only people the prosecution excused for cause were people who were either black or Hispanic? At that point, Your Honor, yes. And then the defense attorney said that. Correct, Your Honor. And did make the allegation that the prosecution was only excusing people of color. And then the parties... Well, we have the prosecutor candidly state, because this is when they come to the veneer person in question, Michelle Rubio. The prosecutor states, honestly, I thought she was white. We don't have an official objection made at this point, Your Honor. It's not until Judge Wilson, again, I think really to preserve this record, says, counsel, are you making an objection to which defense counsel says yes and says except for one strike, which was for a white veneer person, the state is striking people of color. And it's then we see the state trying to parse out all of the peremptories and justify it with race-neutral reasons. So it's at this point we do have the state providing those reasons, which do in fact show... Is it your contention that the ASA saying I didn't know she was Hispanic when the person is in the same room as them and the person testified moments earlier that they were Hispanic is a race-neutral reason under Batson? Your Honor, based on the prosecutor's second statement after that official objection is made prompted by Judge Wilson... You're talking about the second statement that, oh, I can't hear in this room? Correct, Your Honor. Yes, correct. I would say that that statement is absent any obvious or inherent racial discrimination, and we have a prosecutor who is stating I was thinking about anything but her race because I honestly thought she was white. And we don't move on to... But she was a prima facie counsel. Your Honor, the prima facie case here is weak, if any, but we do have a prosecution who then does candidly state with regards to Michelle Rubio, I thought she was white, and thereafter we have the parties parsing out the various grumpies. Is there a case law that says that's sufficient? I would argue that it's not sufficient, Your Honor. We have the states waiving that issue sort of here and moving on, and then we have the judge sort of prompting, you know, give me race-neutral reasons, and then we see the third stage where the judge makes an express ruling. But the problem is saying I didn't think she was Hispanic, a race-neutral reason as to why they excused her. What we don't have is the follow-up to that saying, oh, I didn't think she was Hispanic, but I excused her because she was a victim of a crime or she lived in the same neighborhood or something. You know, something that we can hang our hat on. Correct. We don't seem to have that. Correct, Your Honor, and I think that's because of this sweeping objection to all the peremptories. So we have the state trying to justify giving the race-neutral reasons for the three African-Americans that were struck. And then when we get back to Rubio, that is her response, and I would say, again, absent any inherent discrimination in that statement, we have the prosecutor thinking of anything but her race. And it's at that point, Your Honor, at the second stage. The prosecutor was thinking of something because the prosecution excused her. We don't know what that is. Correct, Your Honor, and we do have on the record that Michelle Rubio was the victim of crimes, and the prosecutor does not explicitly state that. But, again, that's because it's a little bit unorthodox in chambers here where the prosecutor is trying to justify all the peremptories, and then the judge moves on and says, well, and accepts those race-neutral reasons. And defense counsel does seemingly accept those race-neutral reasons as well because he does not renew his bats in motion and does not challenge the state or ask the judge to say, you know, judge, are those contextual reasons? Can we parse them out even more? No, we have jury selection finalized after this, and at the end of jury selection back in chambers when they impanel the full jury, we even have Judge Wilson saying any comments or criticisms, and there are none. So should this court not accept that there was the third stage ruling? The people would argue that defense counsel actually forfeited his bats in objection at that second stage. Why do we think that the court's responsibility to conduct the three-stage Batson hearing is something that's so easily forfeited? Even by you, to follow up, you indicated that you waived the first step. Your Honor, the state would accept waiver because if you look at the record, while that prima facie case is very weak, and I would say there is not a prima facie case, If this isn't a prima facie case, what is? I may be oversimplifying here, but it looks like the only people the state peremptory excused were the jurors that were black or Hispanic. There were three African-Americans that were struck. One was not forthcoming on his prior arrest. But, Your Honor, it's important to point out that at this point, we have a Hispanic that's impaneled when the state strikes Michelle Rubio. So clearly, there's not a pattern as far as Hispanics or minority people in general. But if we were to consider the prima facie case here, we would consider all the relevant circumstances, as this court knows. And that includes, but is not limited to, racial identity between the defendant and excluded venire persons. That doesn't exist here with Michelle Rubio. A pattern of strikes against African-American or minority venire persons. But I would point out that a pattern of strikes does not justify alone a Batson objection, or prima facie case, rather. There has to be more. And there was not more presented. Although we do have, and again, it's in chambers and things are moving rapidly, we do have a state who just candidly and openly wants to justify the peremptories. So in that sense, the state waves. They move on to providing the race-neutral reasons. And defendant does not object to those reasons because they're certainly not contextual. They're not excuses. Saying, honestly, I thought Michelle Rubio was white is certainly not an excuse. I think it shows a very candid response. On the contrary. And so what is the state asking? Let me rephrase that question. Certainly. If we were to agree with the defendant that there was a problem with Batson here, what does the state believe the appropriate remedy would be? Well, Obviously remanding for second and third state hearings. Certainly. But then what? Should we freeze the record and tell the judge, make a finding and send it up to us? Or allow the judge to act upon that finding either by denying a new trial or by then granting a new trial before we get a chance to examine his findings? Sure. Your Honor, certainly there is no new trial warranted here. In fact, I would say. We understand that's your position, but that's not the question. Sure. The question is a hypothetical. Correct. Assuming we agree with the defendant that there's a problem with Batson here and a remand is necessary, what should that remand look like? And, Your Honor, may I just pose that remand is not necessary with this record here. This is a very clear record. I think this court can make a ruling based on this record and certainly see that the trial judge who was in the position to gauge the legitimacy of the prosecutor's credibility and statements at the time made credibility determinations and made an express ruling when Judge Wilson said, well, it appears there's a race-neutral basis, so the motion, the objection is denied. I think this court can make a ruling just based on this record alone. Should you not agree with the people in that sense, I would argue that you only remand for a third-stage ruling. A counsel keeps referring to a third-stage inquiry, but inquiry is not what is required at the third stage. It's merely a ruling. The evaluation happens at the second stage, and we see that. We see the court evaluating with the parties. So all we need is for Judge Wilson, if this court does not agree that he made a ruling, is to make a ruling. But we would certainly ask this court to make a ruling. And that begs my question. Yes. Let's say we tell Judge Wilson to make a ruling. Yes. He can rule two ways, right? He can rule that the juror was properly excused. Yes. In which case, we then have to address, you know, all the other issues. Then he terminates the proceedings and it comes back up to us. Or he can rule that the juror was improperly excused, which would normally require a new trial. Correct. And I think the record... What I'm asking you is, should we authorize him to do the new trial, or should we freeze the record and have that finding come back up to us, so we can, you know, and the other side can say why he was wrong? Mm-hmm. Should that be the case, I would ask that the record, that it come back to you. Based on Judge Wilson's ruling and the fact that he had everything before him, I think that he would make the same ruling that he did, that there was no race discrimination with regards to the state's peremptories. Your Honors, if I may move on to the second issue regarding Officer Woods' testimony. Officer Woods' testimony was certainly admissible because it went towards the course of his investigation in this recent murder of Anthony Cox. The facts here are a little bit unusual. We have Anthony Cox, the victim, familiar with Officer Woods. Officer Woods was a mentor to him and his brother. His brother, Antonio, was the subject of this contested or alleged hearsay. Anthony Cox sees Officer Woods at the gas station just moments before he's murdered. Officer Woods buys him some juice, and then he goes on to a burglary call. Officer Woods, importantly, is on duty. He's in uniform. He is working for Chicago Police. It's moments later that he receives a phone call from Antonio Cox that his brother has just been shot. And thereafter, Officer Woods responds to the gas station where he had just seen Anthony Cox, and he does in fact see Anthony Cox there, his body, his lifeless body. He calls EMS. He secures witnesses. He really instigates the start of this murder investigation. It's on the scene here where he has a conversation, as we see during his testimony, with Antonio Cox who told him that, and the actual testimony is, after you had the conversation with Antonio, did you go anywhere? Officer Woods indicates that he goes to defendant's address, and that's because Antonio had informed him that that was the address where Mr. Elliott stayed, and that's who shot his brother. So if we were to just hear that he went to this address, it would be as if the investigation fell out of thin air. He went to this address because Antonio told him that's where the defendant lived and that's who had just shot his brother. It was certainly relevant to this. It wasn't that part improper indicating that it was Mr. Elliott. And it was objected to by defense counsel. Again, Judge Wilson, on the record here, he immediately sustained it, and he sustained it as to the latter portion regarding identification, stating, but again, it's not being submitted at this point for truth. It's based on conduct and actions why he took the actions that he took. Not only did he immediately admonish the jury, but Judge Wilson, of course, instructed the jury at the close of trial that, you know, any sustained objections should not be considered. And we are to presume that this jury followed those instructions. But nonetheless, even if it was error and this court should consider that it was error, it was certainly harmless error in light of the overwhelming testimony here. We have two eyewitnesses in broad daylight. They testified standing right there with the victim. They see defendant roll up on a bike, pull out a gun, and shoot the victim point blank. Certainly their testimony was not significantly impeached, as defense counsel would have this court believe. It was, in fact, credible. They did not know defendant. They saw these events transpire. And the same day of the shooting, they go to the police department. They see photo arrays, identify defendant in photo arrays, and in a physical lineup. The very same day, hours later. So certainly here we have evidence that is overwhelming and, quite frankly, cumulative of what this latter portion of that statement was, should this court think that it is erroneous. And I would just point out that... Well, what about your counsel's argument that these were flawed witnesses? Excuse me, Your Honor? What about your opposing counsel's argument that these were flawed witnesses? Your Honor, I would say these were very credible witnesses, friends of the victim who just happened to be with him, and flawed in no way. They testified to what they saw. I would say they were not impeached in any way. Certainly Willie Wright testified about, you know, there was some testimony about the feet and how far he was from Anthony Cox. That doesn't discount his testimony that he saw Anthony Cox get shot in front of him. Maybe it was 8 feet, maybe it was 10. He was right there. This occurs at 66th Place in Halsted. And we have Willie Wright and Antonio just heading, they're heading east on 66th Place. And then at the corner there we have Tyrone Shields, Tae, who's a friend of the victim who runs into him. And they're standing at the corner, victim and Tyrone Shields, arguing about the moped. And we know from Willie's testimony, Mr. Wright, that he can see them. And they're sort of waiting for them to figure out who's going to ride this moped and come along. In doing so, they see the defendant ride up on his bicycle. And we have that testimony from Tyrone Shields, who's standing right there as this occurs. He has ample opportunity to observe defendants shoot the victim. I would say in no way is their testimony flawed. Your Honor, based on the strength of the evidence and the curative effect of the trial court's immediate admonishments and the instruction at the course of trial, any error here was certainly harmless. And we would ask that you affirm defendant's conviction for the reasons stated here before you and for the reasons stated in the people's brief. Thank you. Thank you, Counsel. Your Honor, the eyewitness testimony was terribly flawed. You had Willie Wright, who admitted that he was up all night, that the gun put him in a state of shock and that the whole thing lasted one or two seconds. As Counsel noted, Tyrone Shields was distracted by this moped dispute. Directly contradicts one of the only clear aspects of Willie Wright's testimony, which was that there were two misfires before the third trigger pull resulted in the failed shot. Tyrone Shields doesn't say a word about that. And Tyrone Shields was impeached with his felony convictions. So again, there's no way that the eyewitness testimony can carry the state's burden to show that no rational jury could have acquitted Edward Elliott. And we know that in this case, even the jury that heard the inadmissible hearsay and the overstated forensic evidence struggled to reach a verdict. They sent a note to the judge saying, what happens if we agree to disagree? And the result is a hung jury. So a jury that did not hear that inadmissible evidence certainly could have acquitted Edward Elliott. Can you talk a little bit about the Batson waiver forfeiture contentions of the state? Sure. As Justice DeLorte noted, it's the court's responsibility to conduct the Batson hearing, to proceed through the three stages. Just as in Davis, the court here short-circuited it. I don't believe that the defendant in Davis objected that the court was not proceeding to the third stage, and yet the Illinois Supreme Court affirmed this court's reversal, because it seems that Batson error can't be waived in terms of when the judge doesn't proceed to the mandatory third step. I agree with the state that Judge Wilson made a very good record in terms of having all the denier persons identify their race for the record, and that shows you how strong part of the case for the prima facie discrimination was, because the state struck half the blacks that were on the panel, one-third of the Latinos, but only one-sixteenth of the whites that were on the panel. So that's pretty powerful evidence that the judge did find that there was a prima facie case and correctly proceeded to the second stage. In terms of Michelle Rubio, the prosecutor thought she was a white girl. I'm sure that is candid, as the state argues, but it's not a reason. It's the denial of a reason, and the Supreme Court, U.S. Supreme Court, was very clear that mere assurances of good faith aren't sufficient. There has to be an actual reason, not a denial of discriminatory intent. And we can't create excuses and appeal that maybe they struck her truly because Michelle Rubio had a dismissed arrest, an arrest for a charge that was later dismissed. So you certainly, this court, can't make a third stage ruling on this record because, as the Supreme Court noted in Davis, some of the most important evidence for pretext is the prosecutor's body language, defense counsel's prior experience with the prosecutor, none of which we have on this record, none of which we can judge on appeal. But for the least, this court should remain for a third stage passing in brief. Obviously, we prefer that you reverse your demand for a new trial because of the egregious Confrontation Clause violation. If there are no other questions, we'd ask that you reverse your demand for the reasons given in the brief or alternatively reduce every other sentence. Thank you. Thank you. The case will be taken under advisement.